IiWOODARD, Judge.
This is a suit on a note by William H. Giddens, Jr. (Giddens, Jr.) against William H. Giddens, Sr. (Giddens), James East Ay-mond and Advance Equities. The trial court granted Giddens, Jr. summary judgment. We affirm.
FACTS
On March 10, 1978, W.O. Harrison (Harrison) transferred, by an act of Credit Sale Deed and Mortgage, to his nephew, William H. Giddens, Sr., and his wife, Marjorie Wise Giddens, 267.67 acres of land in Natchitoches Parish, Louisiana, for a contract price of $53,534.00. The act of sale specified that Harrison financed $51,000.00 of the total amount. As a result, Giddens issued a note for $51,000.00, payable to Harrison in twenty equal annual installments of principal and interest, commencing on March 10, 1979 and payable on March 10 of each year with a final installment payable on March 10, 1998. The note was paraphed “Ne Varietur ” for ^identification and secured by a duly recorded vendor’s hen associated with security interests.
By July 15, 1983, Giddens reduced his principal balance under the note to $40,-800.00, but stopped paying any installment thereafter. He experienced financial difficulties which eventually led him to file for bankruptcy protection under 11 U.S.C.A. § 12 on April 20,1987.
Giddens hsted in his petition for bankruptcy, the debt to Harrison, specifying an outstanding balance of $40,800.00. The petition also indicated a second mortgage on the land and unrelated tracts held by Exchange Bank and Trust Company (Exchange Bank). Gid-dens filed a Plan under 11 U.S.C.A. §§ 1221, et seq., on November 5, 1987, for which he obtained confirmation per 11 U.S.C.A. § 1225. In accordance with the confirmed plan, Giddens executed a Dation en Paiement of the land to Exchange Bank “subject to mortgage to W.O. Harrison” on March 15, 1988. Exchange Bank simultaneously deed *116 ed the land to H.B. Hubbard (Hubbard) “subject to mortgage to W.O. Harrison.”
Harrison died on March 3, 1988, naming Giddens as his testamentary executor and Giddens, Jr. as his sole universal legatee. The original judgment of possession, rendered on February 17, 1989, omitted the above described note from the inventoried assets subject to the succession. Nevertheless, on May 11,1989, Guidens filed a petition in the Harrison succession, seeking issuance of an amended judgment of possession. On May 15,1989, the court rendered a judgment of possession, declaring Giddens, Jr.’s entitlement to the note.
Giddens received his bankruptcy discharge on December 8, 1989, and his bankruptcy case was closed on February 9,1990.
On June 17, 1994, Hubbard sold the land to Aymond pursuant to a Credit Sale Deed for a total price of $296,466.00, “Subject to Mortgage to W.O. Harrison.”
Giddens, Jr. filed a petition for foreclosure by executory process on July 11, 1994. Ay-mond responded by filing for injunctive relief to arrest the writ of seizure and sale. A hearing was set for September 13, 1994, but a continuance was agreed upon without refix-ing a date.
Subsequently, Giddens, Jr. filed an amended and supplemental petition converting the matter into an ordinary proceeding and requesting an in rem money judgment on the note against Giddens and Aymond. On May 13,1996, Giddens, Jr. filed a second amended and supplemental petition, requesting, in the alternative to an kin rem money judgment, the dissolution of the Harrison/Giddens sale in lieu of foreclosure.
On February 7, 1997, Aymond transferred the land by donation inter vivos to Advance Equities, a trust organization domiciled in Maricopa County, Arizona. Later, it was discovered that Aymond was Advance Equities’ registered managing director and authorized agent. Giddens, Jr. filed a third amended petition, naming Advance Equities as an additional defendant. Efforts to serve Aymond in his capacity as Advance Equity’s managing director proved fruitless, and Gid-dens, Jr. obtained the appointment of a curator ad hoc for the purpose of receiving service.
On October 9, 1997, Giddens, Jr. filed a motion for summary judgment which the trial court heard and granted on December 18, 1997. The trial court entered judgment on Giddens, Jr.’s behalf against Aymond and Advance Equities on an in rem basis in the principal amount of $40,800.00, with applicable interest, attorney’s fees, and costs. The court also recognized the existence of Gid-dens, Jr.’s vendor’s lien.
Aymond filed a Motion for a New Trial which the trial court heard and denied on January 30,1998. Aymond and Advance Equities appeal.
LAW
Motion FOR Summaky Judgment
At the outset, we note that appellate courts review summary judgments de novo under the same criteria that governed the trial court’s consideration of whether or not summary judgment was appropriate. Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818.
Aymond alleges that the trial court erred in granting Giddens, Jr.’s summary judgment. He states that current law provides that summary judgments are not favored and should be used cautiously and sparingly, and that there is a presumption against the grant of summary judgment. We disagree. Ay-mond would have us construe the new statute in a way precisely overruled by the legislature and our recent jurisprudence.
The law of summary judgment implemented in La.Code Civ.P. art. 966 was amended by Act No. 9 of the First Extraordinary Session of 1996. Further, in 1997, the legislature amended La.Code Civ.P. art. 966 to overturn legislatively, jurisprudence ^inconsistent with Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691. In Hayes, we found that the legislature overruled the presumption against the grant of summary judgment. We stated that the amendment “leveled the playing field” by *117 removing the overriding presumption in favor of trial on the merits and by scrutinizing equally the supporting documents submitted by the mover and nonmover.
La.Code Civ.P. art. 966 now provides, in pertinent part, that “[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action_ The procedure is favored and shall be construed to accomplish those ends.” In other words, summary judgment is favored and shall be applied liberally. Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
The amended provisions of La.Code Civ.P. art. 966 are procedural in nature and, thus, subject to retroactive, as well as prospective, application. Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498.
Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and, admissions on file together with affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).
La.Code Civ.P. art. 966, as amended, charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party’s supporting documentation must be sufficient to establish that no genuine issue of material fact remains at stake. Such a burden is not unlike that assigned to the moving party before the amendments. Townley, 702 So.2d 323. Once the mover makes a prima facie showing that there is no genuine issue as to a material fact and that summary judgment should be granted, the burden shifts to the nonmover.
The amendments to La.Code Civ.P. art. 966 heightened the nonmover’s burden to rebut the showing made by the mover of the non-existence of a genuine issue of material fact. Townley, 702 So.2d 323. The nonmover must sufficiently establish the existence of an essential element of his claim on which he is to bear the burden of proving at trial. Id. Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a ^genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The threshold question in reviewing a trial court’s grant of summary judgment is whether a genuine issue of material fact remains. Kumpe, 701 So.2d 498. After which, we must determine whether reasonable minds could conclude, baseu on the facts presented, that the mover is entitled to judgment. Id. Thus, summary judgment is apropos when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts. Id.
Facts are material if they determine the outcome of the legal dispute. Soileau, 702 So.2d 818. The determination of the materiality of a particular fact must be made in light of the relevant substantive law. Id.
Validity of the MoRtgage
Aymond argues that the mortgage accelerated immediately upon default on any one installment; thus, it had extinguished by prescription. He contends that when it extinguished, it was not revived by a sufficient acknowledgment. Thus, Aymond asserts that the mortgage is not enforceable against him and Advance Equities. Aymond claims that the trial court should have proceeded, at least, with a trial on the merits because issues of material facts remained. We disagree.
We note that a mortgage is a nonpos-sessory right granted to a creditor over the property of a debtor to secure the performance of an obligation. La.Civ.Code art. 3278. It empowers the mortgagee to have the property seized and sold in default of payment of the debt and to have the proceeds applied towards the satisfaction of the *118 obligation in preference to the claims of others. La.Civ.Code art. 3279. A mortgage becomes effective against third parties from the time it is filed for registry. La.Civ.Code art. 3308. It remains on the property until it expires or is extinguished. La.Civ.Code art. 3319, Newman v. Livingston Parish Police Jury, 603 So.2d 250 (La.App. 1 Cir.1992). Subsequent transfers of the burdened property does not release it of the mortgage. Id.
Although the property was transferred from Giddens to Exchange Bank via a dation en paiement, it is well settled that such a mode of payment affects the transfer of title as an ordinary contract of sale, and thus, conveys land cum onere; i.e., burdened Isby any previously recorded encumbrances. Quality Finance Co. Donaldsonville v. Bourque, 315 So.2d 656 (La.1975).
Additionally, we find that Gid-dens’ bankruptcy discharge did not affect the validity of the mortgage. Indeed, the plan provided that the land shall be given in payment from Giddens to Exchange Bank “subject to” the mortgage and did not cancel the mortgage inscription. The mortgage still benefits from the full effect of recordation. It is also well settled that a discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor of his personal liability under the debt. Dubin v. Dubin, 25,996 (La.App.2d Cir.8/17/94); 641 So.2d 1036, Hall v. National Gypsum Co., 105 F.3d 225 (5th Cir.1997).
A discharge in bankruptcy is neither payment nor extinguishment of a debt but merely constitutes a bar to enforcement which must be set forth as an affirmative defense. La.Code Civ.P. art. 1005, In Re Carwell, 323 F.Supp. 590 (E.D.La.1971). Furthermore, a mortgage recorded prior to the adjudication in bankruptcy is not destroyed by the adjudication but retains its validity in rem on the encumbered property. Socony Mobil Oil Co. v. Burdette, 309 So.2d 655 (La.1975). Such rules apply to judicial mortgages as well as to conventional mortgages. Ferguson v. Porter, 359 So.2d 676 (La.App. 1 Cir.1978).
The record establishes that the land passed from Exchange Bank to Hubbard and later from Hubbard to Aymond, both “subject to” the mortgage. Giddens, Jr. is the lawful successor in interest to Harrison, thus, Giddens, Jr. is subrogated to Harrison’s rights to the mortgage.
In considering the defense that a mortgagee possesses against a third person claiming that the mortgage or vendor’s privilege is not enforceable, La.R.S. 9:5553 provides:
If the obligor of the written obligation that the vendor’s privilege secures does not raise the following defenses or claim the extinction of the vendor’s privilege, then, as long as the effects of recordation continue in accordance with Articles 3328 through 3334 of the Civil Code, third persons may not raise as a defense to the enforcement or claim the extinction of the vendor’s privilege for any cause, other than forged signatures, based on: the invalidity of the written obligation; the extinction of the written obligation; or the lack of registry or any deficiency in registry of any transfer, assignment, or pledge of the written obligation from the original vendee.
b(Emphasis added).
In the instant ease, Aymond does not contest the facts, but merely argues the legal meaning which should be attributed to certain events that are dispositive of the resolution of the ease. More specifically, he does not dispute any of the material facts which would oppose the application of La.R.S. 9:5553.
There is no dispute that, within the meaning of the statute, Giddens is the obli-gor and that he has not raised any defenses as provided by the statute. Further, the effect of the recordation of the mortgage continues for six years after the maturity date of March 10, 1998 or until March, 2004. La.Civ.Code art. 3329. It is established that the third persons as provided for by the statute are Aymond and Advance Equities. While claiming that the mortgage is extinguished, Aymond and Advance Equity, would have us reverse the trial court decision on grounds expressly precluded by the statute.
*119 Thus, we hold that the mortgage is enforceable. Because the relevant facts are undisputed, we find that the suit was ripe for disposition by summary judgment. We do not need to reach the other assignment of errors presented by Aymond and Advance Equities.
CONCLUSION
For the foregoing reasons, we find that the trial court’s summary judgment should be affirmed.
AFFIRMED.